IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.                                                1:15-cr-367-WSD-JKL

ANTHONY LEPORE, JOHN RIFE,
and BRIAN DOMALIK,

                     Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendant John Rife's ("Rife") Motion In Limine on the Use of Handwritten Notes of Cecil Clark, or in the Alternative, Motion to Exclude Clark Notes [101] and Motion In Limine on the Use of TV Interview [103].  Also before the Court are the Government's First Omnibus Motion In Limine to Exclude or Limit Certain Defense Evidence, Statements, and Arguments at Trial [105] and First Omnibus Motion In Limine to Admit Evidence at Trial [106].[1]

---

[1]     The Court will address, at the Pretrial Conference on September 8, 2016, Defendant Anthony Lepore's Motion for Additional Peremptory Challenges [133].

## I.     BACKGROUND

This is a public corruption case.  On October 7, 2015, a Grand Jury returned an indictment [1] charging Defendants Anthony Lepore ("Lepore"), Brian Domalik ("Domalik") and Rife (together, "Defendants") with one (1) count of conspiracy to commit honest services mail fraud, in violation of 18 U.S.C. § 1349, and nine (9) counts of honest services mail fraud, in violation of 18 U.S.C. §§ 1341, 1346.  On July 13, 2016, a Grand Jury issued the First Superseding Indictment [107] charging Defendants with one (1) count of conspiracy to commit honest services fraud, in violation of 18 U.S.C. § 1349; ten (10) counts of honest services fraud, in violation of 18 U.S.C. §§ 1341, 1346, 2; and five (5) counts of bribery, in violation of 18 U.S.C. §§ 666(a)(2), 2.  The First Superseding Indictment further charged Lepore with one (1) count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(1).  On August 9, 2016, a Grand Jury issued the Second Superseding Indictment [136] ("Indictment") charging Defendants with the same counts listed in the First Superseding Indictment.[2]

The Indictment alleges that Lepore was the president and majority owner of Rite Way Service Inc. ("Rite Way"), an Alabama-based company offering cleaning

---

[2]     The Second Superseding Indictment appears to contain minor changes in language.

and other janitorial services to businesses and governments.  (Indictment ¶¶ 2-3).
Rife served as Regional Vice-President for Rite Way's Georgia Division and,
from 2010 through 2014, Domalik served as Division Manager for Rite Way's
Georgia Division.  (Indictment ¶¶ 4-5).

The Indictment alleges that, from June 2006 through December 2012,
Defendants participated in a scheme to obtain janitorial services business by
making illicit payments to Patrick Jackson ("Jackson"), the Custodial Services
Manager for DeKalb County, Georgia ("DeKalb County") and Director of
Building Services for the Georgia World Congress Center ("GWCC").  Defendants
allegedly paid for Jackson's housing rent, utilities, furniture, and parking garage
space, and gave him cash "and other payments" while he worked for DeKalb
County and GWCC.  (Indictment ¶ 10).  In exchange, Jackson is alleged to have
used his government position to help Rite Way win, renew and expand janitorial
services contracts with DeKalb County and GWCC.  (Indictment ¶ 11).  The
Indictment also alleges that Lepore took action to delete his Rite Way email after
receiving a company-wide litigation hold on documents and other materials, and
after learning of the Government's investigation into Rite Way's relationship with
Jackson.  (Indictment ¶¶ 38-40).

In April 2015, Jackson pled guilty to one (1) count of conspiracy to commit honest services mail fraud.  See United States v. Patrick Jackson, No. 1:14-cr-0339 (N.D. Ga. Apr. 2, 2015), ECF No. 33.  In May 2015, Cecil Clark ("Clark"), who worked as Rite Way's Georgia Division Manager from 2003 through 2010, pled guilty to one (1) count of conspiracy to commit bribery.  See United States v. Cecil Clark, No. 1:15-cr-121 (N.D. Ga. May 26, 2015), ECF No. 6.  Jackson and Clark are cooperating with the Government.

On July 13, 2016, Rife and the Government filed their motions in limine. Rife seeks (1) to "prohibit the Government from referencing or offering as evidence certain handwritten notes of Cecil Clark," ([101] at 1), and (2) to "prohibit the Government from referencing or offering as evidence a video recording of a TV interview of Defendant Rife in [sic] by a newsman from WSB Atlanta," ([103] at 1).

The Government seeks to exclude evidence of, or references to, (1) other DeKalb County public corruption scandals, (2) an "extortion" or "economic coercion" defense, (3) Domalik's Georgia Tech basketball career, (4) details about Rife's medical problems, (5) Rite Way's efforts to restore Lepore's email after its deletion, (6) the Georgia Bureau of Investigation's ("GBI") alleged destruction or spoliation of evidence, (7) Defendants' good character, (8) pretrial discovery

4

issues, and (9) any defense that "other people did it too" and were not prosecuted. (See [105]).

The Government seeks to admit evidence of (1) payments from Rite Way to Jackson that are not specifically alleged in the Indictment, (2) Clark's handwritten notes, (3) Les Pendleton's[3] expected testimony at trial that Lepore told him to approve payments to Jackson and stated "some people are corrupt," (4) the WSB-TV interview of Rife concerning a GBI investigation into Rite Way and GWCC, (5) the recording of, and Clark's testimony about, an August 2013, telephone conversation between Clark and Rife, (6) Lepore's August 2013, voicemail message for Clark, and Clark's testimony about their conversation when he called Lepore back, and (7) Lepore's misrepresentations during 2013 negotiations to sell Rite Way to another company.  (See [106]).

## II.   DISCUSSION

### A.   Rife's Motions In Limine

#### 1.   Clark's Handwritten Notes

Rife moves to exclude Clark's handwritten notes about the alleged conspiracy.  ([101]).  In August 2013, Clark provided the GBI with three (3)

---

[3]     The Government states that Pendleton was Rite Way's Chief Financial Officer.  ([106] at 7).

photocopied pages of handwritten notes he purportedly authored in 2006, 2007, 2009, and 2010.  ([106] at 4).  The notes contain six (6) entries.  In an entry dated June 27, 2006, Clark wrote that Rife told him that "Lloyd," a Rite Way human resources employee, "does not know how much we are in bed with Patrick." ([106] at 4-5).  In an entry dated June 7, 2007, Clark wrote that Lepore told him "Rite Way's stance not to settle Jackson's suit would prove Rite Way is not in bed with Jackson."  ([106] at 5).  In an entry dated October 11, 2007, Clark wrote that he told Rife that "Jackson was hinting that needed money" and that Rife responded "it's a good account we are making money.  Let me know if he asks for something. I'll let Anthony know."  ([106] at 5).[4]  The parties do not identify the specific content of the remaining entries.  Rife seeks to exclude all of the notes.  ([147] at 2).

Rife argues the photocopied notes should be excluded, under Rule 1003 of the Federal Rules of Evidence ("Rule 1003"), because there is "a genuine question . . . about the original's authenticity."  Fed. R. Evid. 1003.  Citing a misdated entry and a GBI agent's doubts about Clark's credibility generally, Rife claims Clark (1) did not make the notes contemporaneously with the events discussed in them, and (2) created the notes "out of whole-cloth to ingratiate

---

[4]     It appears this entry was misdated "10/11/17."  ([101] at 4).

himself with the GBI."  ([101] at 3-4).

Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity."  Fed. R. Evid. 1003.  "The burden of challenging admissibility of a photocopy rests with the party against whom it is offered."  United States v. Garmany, 762 F.2d 929, 938 (11th Cir. 1985).  This burden is "significant" and requires "a substantial showing of reasons to doubt the authenticity of the original or the duplicate." 5 Christopher B. Mueller & Laird C. Kirpatrick, Federal Evidence § 10:24 (4th ed. May 2016 Update).  The objecting party "must offer what amounts to cogent and compelling evidence, of the sort that would require any reasonable person to find that the so-called original is not authentic."  Id.

Rife does not meet this burden.  He cites a single entry, misdated "10/11/17," that appears to refer to events in "10/11/07."  This mistake likely was a routine typographical error, considering the stated date had not yet occurred.  Rife will be able to cross-examine Clark on the date.  Rife also states that a GBI agent expressed "serious doubts about the credibility of Mr. Clark at the time that he provided these notes."  ([101] at 3).  The GBI agent's testimony, however, focuses on Clark's statements about a telephone conversation and does not address Clark's notes.  The agent also testified that, although he has "doubts" about whether

7

Clark's alleged telephone call occurred, he "th[ought] it probably did[,] giving him the benefit of the doubt." ([83] at 31). Neither the misdated entry, nor the GBI agent's testimony, meet Rife's burden to make a "substantial showing of reasons to doubt the authenticity" of the handwritten notes. 5 Christopher B. Mueller & Laird C. Kirpatrick, <u>Federal Evidence</u> § 10:24 (4th ed. May 2016 Update); Fed. R. Evid. 1003. The photocopied notes are not inadmissible under Rule 1003.[5]

Rife next argues the notes are inadmissible hearsay. The Government contends that, under Rule 801(d)(1)(B), they are not hearsay and thus are admissible. ([106] at 5-6). Rule 801(d)(1)(B) provides that a statement is not hearsay where both (1) "[t]he declarant testifies and is subject to cross-examination" and (2) the statement "is consistent with the declarant's testimony and is offered: (i) to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground." Fed. R. Evid. 801(d)(1)(B). Under subsection (i) of this rule, the prior consistent statement must predate the charged recent fabrication or improper influence or motive. <u>See</u> <u>Tome v. United States</u>, 513 U.S. 150, 167

---

[5] The admissibility of the photocopied notes may be moot because the Government recently obtained the original notes and Rife's counsel examined them on August 10, 2016. ([156] at 17 n.9).

(1995).  District courts have "broad discretion in determining the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B)."  United States v. Ettinger, 344 F.3d 1149, 1160 (11th Cir. 2003) (internal quotation marks omitted) (quoting United States v. Prieto, 232 F.3d 816, 819 (11th Cir. 2000)) (admitting, to rebut an implied charge of recent fabrication, a witness' prior consistent statement in an FBI report).

The Government expects Clark to testify about the conversations reflected in the handwritten notes.  ([106] at 5).[6]  If Defendants claim Clark "recently fabricated" his testimony about the events described in the notes, or allege an improper influence or motive for his testimony, Rule 801(d)(1)(B)(i) permits the Government to introduce the handwritten notes to rebut these charges if the notes of the conversations predate the claimed recent fabrication or improper influence or motive.  For example, if Defendants, at trial, claim Clark is testifying falsely to support a sentence reduction or to curry favor with the Government, Rule 801(d)(1)(B)(i) permits the Government to introduce the handwritten notes

---

[6]      This testimony is admissible as non-hearsay opposing party's statements and as non-hearsay statements "made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(A), (E).  Clark's expected testimony about these conversations may also be admissible to prove Defendants' "then-existing state of mind."  Fed. R. Evid. 803(3).  Defendants do not appear to dispute the admissibility of Clark's testimony on the conversations.  (See [156] at 10).

because they ostensibly were written on or before 2010, before any motive to curry favor with the Government arose.[7]  If, at trial, Defendants attack Clark's credibility on grounds other than a claimed recent fabrication or improper influence or motive, Rule 801(d)(1)(B)(ii) permits the Government to introduce Clark's handwritten notes to rehabilitate his credibility.[8]  Ultimately, a final ruling of admissibility must be deferred until the notes are sought to be used at trial.

### 2.    Rife's Television Interview

Rife moves to "prohibit the Government from referencing or offering as evidence a video recording of a TV interview of Defendant Rife in [sic] by a newsman from WSB Atlanta."  ([103] at 1).  The video recording refers to (1) GWCC's allegations that Rite Way overcharged GWCC for "equipment, supplies, and chemicals," and (2) an alleged kickback scheme in which, at Jackson's direction, Rite Way hired a subcontractor from which Jackson received payments.  ([103] at 2).  During the interview, Rife briefly denied that Rite Way did "anything wrong," stated "it's not our culture," and denied that Rite Way was

---

[7]     The Court also notes that "[t]he possible existence of an earlier and different motive to lie would not prevent the admission of a prior consistent statement designed to rebut a subsequent different claim of fabrication."  United States v. DeSimone, 488 F.3d 561, 575 (1st Cir. 2007).

[8]     This assumes that the handwritten notes are relevant and not inadmissible under Rule 403, which the Court cannot determine without additional information.

involved in "any kickbacks." ([124] at 4). Rife argues the interview is irrelevant and should be excluded under Rules 401 and 402 of the Federal Rules of Evidence.

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. The Government claims Rife's denials are relevant because they "belie any suggestion that Rife was unaware of what was happening with Jackson and the GWCC, or was simply a detached middle manager." ([124] at 5). The Court disagrees. Rife's general denials may suggest that, when the interview was conducted in late 2013, he knew enough about the alleged issues to deny them. However, Rife's denials do not render "more or less probable" that he knew about these issues during the earlier time period—June 2006 through December 2012— alleged in the Indictment. The news report also provides only short snippets of Rife's interview, leaving the context for Rife's denials unclear. The issues discussed in the news report are not alleged specifically in the Indictment, further attenuating their relevance. The interview is excluded as irrelevant and, even if relevant, its limited probative value is outweighed by the risk of undue prejudice, including because it could mislead the jury into believing the reporter had evidence of the alleged wrongful payments. See Fed. R. Evid. 403. Rife's motion on this

11

issue is granted.[9]

### B.   Government's First Omnibus Motion In Limine to Exclude Evidence

#### 1.   Other DeKalb County Public Corruption Scandals

The Government seeks to exclude evidence of, or references to, other DeKalb County public corruption scandals.  ([105] at 7-9).  Lepore does not oppose the Government's motion and Rife opposes it only conclusorily.  ([127] at 16; [128] at 2).  The Court agrees that these scandals are irrelevant and not probative of any issue in this case and, even if they were relevant, they should be excluded under Rule 403 because they risk confusing the issues and suggesting to the jury that the conduct alleged is a "cost of doing business" with DeKalb County.  See Fed. R. Evid. 403.  The Government's motion on this issue is granted.

#### 2.   The "Extortion" or "Economic Coercion" Defense

The Government seeks to exclude evidence or argument that Defendants are not guilty of bribery because they were victims of extortion or economic coercion by the Government.  ([105] at 9-10).  Defendants do not intend to make this

---

[9]      If the Government contends the interview becomes relevant as a result of the evidence presented at trial, the Government may renew its request to admit the video recording based on the record developed at trial.

argument, or do not oppose the Government's request,[10] and the Government's

motion is granted.  See United States v. Colacurcio, 659 F.2d 684, 690 (5th Cir.

1981) ("[T]he duress defense is not available 'if there was a reasonable, legal

alternative to violating the law, a chance both to refuse to do the criminal act and

also to avoid the threatened harm.' . . . [A]ppellants' insistence that extortion can

be a defense to bribery is incorrect." (quoting United States v. Bailey, 444 U.S.

394, 100 (1980))).[11]

### 3.    Domalik's Georgia Tech Basketball Career

The Government seeks to exclude evidence of, or references to, Domalik's

Georgia Tech basketball career.  ([105] at 10-11).  Defendants do not oppose this

motion, and the Government's motion to exclude this evidence is granted.

---

[10]    Domalik did not file a response to the Government's motion.  Rife and
Lepore do not intend to "make the improper argument that the solicitation of
money by Patrick Jackson with regard to the apartment was extortion rather than
bribery." ([127] at 16); [128] at 2).
[11]    In their response briefs, Rife and Lepore argue they are entitled, under either
Rule 404(b) or an "inextricably intertwined" theory, to introduce evidence of
Jackson and Clark's participation in "the Wright Group Scheme."  ([127]
at 16-17).  Rife and Lepore do not specifically identify the evidence they seek to
introduce or the intended purpose for its introduction.  In the absence of a
description of the evidence they intend to introduce, the Court declines to rule on
this issue pending trial.

4.   Rife's Medical Problems

The Government seeks to exclude evidence of, or references to, "the details of Rife's medical conditions and procedures" during the alleged conspiracy. ([105] at 12).  The Government does not oppose the introduction of evidence that Rife took medical leave, "to show that Rife may not have been working on certain dates that are relevant to the conspiracy."  ([105] at 12; [156] at 23).  Rife argues, without elaboration, that evidence of his "medical conditions and treatments properly relates to [his] state of mind, knowledge, intent, and lack of preparation or plan—as charged in the Indictment."  ([127] at 15).

Depending on the specific evidence sought to be admitted, and Rife's purpose for introducing it, evidence of Rife's medical conditions or procedures may be relevant and admissible.  For example, limited evidence of his medical conditions or procedures may be admissible to meaningfully explain his extended absences from work, or to show he was not participating in certain aspects of the conspiracy.  The Court will rule, at trial, on any objections to evidence of Rife's medical problems.  The Court will, at that time, have more context to make a ruling on the admissibility of the evidence.  The Government's motion is, for now, denied without prejudice.

14

### 5.   The Recovery or Restoration of Lepore's Rite Way Email Account

The Government seeks to exclude evidence of, or references to, Rite Way's "effort to recover or restore Lepore's email after" Lepore allegedly ordered employees to delete his company email.  ([105] at 13).  The Government argues this evidence is irrelevant to Lepore's obstruction of justice charge because any restoration efforts occurred after Lepore left Rite Way and after Lepore requested the deletion.[12]  The issue here is whether Lepore intended to obstruct justice.  If Lepore seeks to offer evidence of his email restoration, he must do so outside the presence of the jury so the Court may rule on its admissibility when there is better context to evaluate whether the evidence is admissible.  The Government's motion on this issue is denied without prejudice.

### 6.   The GBI's Alleged Destruction or Spoilation of Evidence

In August 2013, Clark allegedly called Lepore and tried, but failed, to record their conversation.  The GBI did not preserve a copy of Clark's attempted recording because, in the GBI's assessment, the recording quality was too poor to determine what was said during the conversation.  The Government requests "an order precluding the defendants from making statements, arguing, eliciting

---

[12]   The Government also argues, without explanation, that the evidence should be excluded under Rule 403.

testimony, or introducing evidence that:  (a) the Government destroyed the recording, lost the recording, negligently failed to preserve the recording, or engaged in any misconduct related to the recording; and (b) the unpreserved recording was or is somehow exculpatory as to any defendant." ([156] at 29).  Rife and Domalik do not oppose this request, and Lepore opposes it only "to the extent that the Government asks this Court to preclude Mr. Lepore from offering any evidence concerning the 'audibility' of the recording or its current unavailability." ([128] at 27-28).  The Government states that its motion does not preclude Lepore's request.  ([156] at 29).  Accordingly the Government's motion is granted.[13]

### 7.    Character Evidence

The Government seeks to exclude evidence of Defendants' "general[] good character," "specific instances of good conduct," and "lack of prior bad acts." ([105] at 16-19).  Rife and Lepore generally oppose this request.  ([127] at 17; [128] at 28).

"Evidence of a person's character or character trait is not admissible to

---

[13]    If Lepore seeks at trial to offer evidence about the unavailability or availability of the recording, he must do so outside the presence of the jury so the Court can determine whether it is admissible.  The Court will then have the detail and context necessary to rule on the admissibility of this evidence.

prove that on a particular occasion the person acted in accordance with the character or trait."  Fed. R. Evid. 404(a)(1).  Criminal defendants may, under Rule 404(a)(2)(A), offer "evidence of [their] pertinent trait," but may do so only "by testimony about the person's reputation or by testimony in the form of an opinion," Fed. R. Evid. 405(a); see United States v. Reed, 700 F.2d 638, 645 (11th Cir. 1983) ("[T]he only type of evidence admissible to show defendant's character is proof of his reputation in the community."  (quoting U.S. v. Davenport, 449 F.2d 696, 699 (5th Cir. 1971))).[14]  "Specific instances of conduct are inadmissible as character evidence."  United States v. Ellisor, 522 F.3d 1255, 1271 n.22 (11th Cir. 2008); see Fed. R. Evid. 404(b)(1).[15]  A defendant is not permitted to "portray [himself] as a good character through the use of prior "good acts,'" United States v. Camejo, 929 F.2d 610, 613 (11th Cir. 1991), and "[e]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant," United States v. Grimm,

---

[14]     In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions handed down by the former Fifth Circuit before October 1, 1981.

[15]     This evidence is admissible, however, "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense."  Fed. R. Evid. 405(b).  Defendants do not argue this exception applies here.  Specific acts also are admissible, under Rule 404(b)(2), for non-character purposes "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2); see United States v. Dimora, 750 F.3d 619, 630 (6th Cir. 2014) (considering the admissibility, under Rule 404(b)(2), of specific instances of prior good conduct)).

568 F.2d 1136, 1138 (5th Cir. 1978); see United States v. Scarpa, 897 F.2d 63, 70

(2d Cir. 1990) ("A defendant may not seek to establish his innocence, however,

through proof of the absence of criminal acts on specific occasions.").

Defendants are precluded from offering evidence of their "specific instances

of good conduct" or "lack of prior bad acts" to demonstrate good character, and

they may not offer evidence of good character not tied to a particular "pertinent

trait."  ([105] at 16, 18); Fed. R. Evid. 404(a)(2)(A).  The Government's motion to

exclude this evidence is granted.[16]

### 8.   Pretrial Discovery Issues

The Government requests that "any discovery-related issues . . . be

addressed outside the presence of the jury."  ([105] at 19).  Lepore does not oppose

this motion and Rife opposes it only because he cannot "anticipate when and how

[discovery issues] may arise" at trial.  ([127] at 17; [128] at 28).  "[C]ommentary

on discovery matters by either party in the presence of the jury could create the

impression that the opposing party is withholding information."  United

States v. Dochee, No. 08-cr-108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15,

---

[16]   The Government cites, as examples of what it seeks to exclude, character
evidence (1) "that Rite Way did not have a habit of bribing public officials,"
(2) "that the defendants have not bribed others in the past," (3) "that [Defendants]
lack any criminal history," and (4) that "they are generally good, law-abiding
people."  ([105] at 16).  This evidence is excluded.

2009).  Discovery issues are not relevant to the jury's function and will, if necessary, be addressed outside the jury's presence.  The Government's motion on this issue is granted.

### 9.    The "Other People did it too" Defense

The Government seeks to exclude argument that Defendants should be acquitted because other Rite Way employees engaged in similar conduct but were not prosecuted.  ([105] at 20-21).  Rife opposes the Government's motion, arguing that other employees' wrongdoing may be relevant to the "knowledge and intent" of Defendants and the Government's witnesses.  ([127] at 18).  Lepore does not oppose the Government's motion, provided he may (1) offer evidence of others' involvement in the transactions at issue in this case, and (2) argue "not necessarily 'other people did it too,' but that 'other people did it.'"  ([128] at 28-29).  The Government does not oppose the argument and examination outlined by Rife and Lepore.  ([156] at 30).  Accordingly, the Government's motion on this issue is granted and Defendants may not argue, expressly or impliedly, that the failure to indict others is a reason to acquit Defendants.  ([156] at 30).

C.    Government's First Omnibus Motion In Limine to Admit Evidence

1.    Other Rite Way Benefits Conveyed to Jackson

The Government seeks to admit evidence of benefits, not specifically alleged in the indictment, conveyed by Rite Way to Jackson.  ([106] at 2).  The parties' briefing on this issue focuses on evidence that Rite Way, at Jackson's direction, during the time period relevant to the conduct charged against Defendants, hired The Wright Group to perform janitorial services work at DeKalb County and the GWCC.  ([106] at 2).  The Wright Group paid Jackson for obtaining this business for The Wright Group.  ([102] at 4).  The Wright Group did not have any employees, equipment or meaningful assets, and re-subcontracted, to other parties, the work it obtained from Rite Way.  ([102] at 4).  The Government alleges that Defendants were involved in, or knew about, Rite Way's relationship with The Wright Group.  ([148] at 4).[17]

---

[17]    For example, a GWCC witness is expected to testify, at trial, that Domalik told him (1) Rite Way hired The Wright Group because of Jackson, (2) Domalik suspected Jackson was profiting from the arrangement, and (3) Domalik did not tell GWCC about his suspicion for year.  ([148] at 4).  Lepore allegedly told GWCC officials, in the presence of Rife and Domalik, that Rite Way hired The Wright Group at Jackson's direction.  ([148] at 4).  Clark is expected to testify that he discussed The Wright Group with both Rife and Domalik, and that he assumed Jackson was being paid by The Wright Group.  ([148] at 4).  When Jackson left the GWCC, Domalik terminated Rite Way's contract with The Wright Group.  ([148]

Evidence of uncharged wrongdoing is admissible, as intrinsic to the charged offenses, if it (1) "arose out of the same transaction or series of transactions as the charged offense, (2) [is] necessary to complete the story of the crime, or (3) [is] inextricably intertwined with the evidence regarding the charged offense." United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (quoting United States v. Baker, 432 F.3d 1189, 1205 n. 9 (11th Cir. 2005)).

Evidence of Rite Way's conveyance of benefits to Jackson, through The Wright Group, likely is admissible as intrinsic to the charged offenses because it casts light on the "context, motive and set-up" of those offenses and is "linked [with them] in time and circumstance."  United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985).  The Rite Way benefits that were conferred on Jackson, through The Wright Group, occurred during the alleged conspiracy and purportedly involved Defendants, Rite Way and Jackson.  ([106] at 3).  This "weighs heavily toward finding the acts are intertwined." United States v. Metayer, 543 F. App'x 970, 972 (11th Cir. 2013) (quoting United States v. Lehder–Rivas, 955 F.2d 1510, 1516 (11th Cir. 1992)).  These illicit benefits are relevant for the jury to consider "the conspiracy's structure and mechanics" by

at 4).  The Court does not consider now the admissibility of this testimony, in whole or in part.

illustrating how and when Rite Way provided benefits to Jackson, <u>United</u> <u>States v. Ducuara De Saiz</u>, 511 F. App'x 892, 896 (11th Cir. 2013), further "link[]" the parties involved in the offenses by providing additional details about Rite Way's relationship with Jackson, <u>United States v. Portillo</u>, 287 F. App'x 818, 819 (11th Cir. 2008), are "part of a continuing pattern of illegal activity," <u>United States</u> <u>v. Barnes</u>, 49 F.3d 1144, 1149 (6th Cir. 1995), and offer context for related events alleged in the Indictment.  <u>See</u> <u>United States v. Madrid</u>, 610 F. App'x 359, 385 (5th Cir. 2015) (finding bribery evidence intrinsic to an alleged conspiracy to defraud the United States because the bribe "was undertaken for the very purpose of continuing one of the conspiratorial objectives" and because the evidence "further established for the jury the 'conspiratorial relationship' between [the parties] and . . . provided relevant contextual evidence regarding the nature and extent of the conspiracy"), <u>cert. denied,</u> 136 S. Ct. 379 (2015).

The Court concludes that evidence of benefits that Rite Way conferred on Jackson, through The Wright Group, likely is admissible as intrinsic to the charged offenses.[18]  The Court will consider objections to this evidence at trial if Defendants believe the evidence actually presented does not support the

---

[18]   The Government's proposed evidence also may be admissible to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b).

admissibility, including the relevance, of benefits conveyed to Jackson through The Wright Group.[19]  For now, the Government's motion on this issue is granted.[20]

### 2.    Clark's Handwritten Notes

The Government seeks to admit Clark's handwritten notes about the alleged conspiracy.  ([106] at 4-6).[21]  For the reasons stated earlier in this Opinion and Order, the Court defers its ruling on this issue until trial.

### 3.    Pendleton's Expected Testimony

The Government expects Les Pendleton, Rite Way's former Chief Financial Officer, to testify at trial that Lepore directed him to approve a payment to Jackson

---

[19]    Intrinsic evidence must satisfy the requirements of Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Exclusion under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility."  United States v. Alfaro–Moncada, 607 F.3d 720, 734 (11th Cir. 2010) (quoting United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003)).  Defendants do not argue that the Government's proposed intrinsic evidence warrants exclusion under Rule 403.

[20]    The Government also lists other benefits conveyed to Jackson, including retail gift cards, the purchase of a television, and contributions to the cost of an event hosted by Jackson.  ([106] at 2).  The Court does not take a position on the admissibility of these "benefits."

[21]    It is unclear whether the Governments seeks to admit all of Clark's notes or only the three (3) entries that the Government describes in its motion.  ([106] at 4-5).

and stated "some people are corrupt."  ([106] at 7).  This expected testimony is

relevant to the allegations in the Indictment and because, under Rule 801(d)(2)(A),

a statement of a party opponent is not hearsay.  See Fed. R. Evid. 401,

801(d)(2)(A).  The Government's motion to admit Pendleton's testimony is

granted.

          **4.**     <u>Rife's Television Interview</u>

The Government seeks to admit the video recording of the October 2013,

WSB-TV interview of Rife.  ([106] at 7).  For the reasons stated earlier in this

Opinion and Order, the Government's motion is denied.

          **5.**     <u>Clark's August 2013, Telephone Conversation with Rife</u>

On August 9, 2013, Clark recorded a telephone conversation he had with

Rife.  ([106] at 8-9).  Clark told Rife that the GBI interviewed him about Jackson's

apartment, which he referred to as "Twelve Century Place the apartment."  Rife

responded, "Oh.  Aww man.  Is that where Patrick lived?"  When Clark said it was,

Rife responded, "Ok.  I don't know what to say about it."  Rife said that "he knows

[the GBI] contacted Brian [Domalik]."  Referring to Rite Way's use of GWCC

chemicals, Rife stated "Patrick [Jackson] said to do it."  Rife also referred to

Jackson as "our contact."  Rife concluded by saying, "I'm sorry about all this stuff,

but it is what it is."  (See [106] at 9).

This conversation is relevant because it suggests Rife knew about Jackson's apartment, which was allegedly paid for by Rite Way, and because his apology and concern about the GBI suggests consciousness of guilt. See Fed. R. Evid. 401. The recording of, and Clark's testimony about, this telephone conversation are admissible as non-hearsay statements of a party opponent. See Fed. R. Evid. 801(d)(2)(A).[22]  The Government's motion to admit this evidence is granted.

6.      Lepore's August 2013, Voicemail and Telephone Conversation with Clark

On August 9, 2013, Clark received a voicemail message from Lepore, in which Lepore said, "Hey Cecil.  It's Anthony.  Just thought I'd give you a call.  I heard about . . . um . . . you had a visit.  [Laughter].  Sorry about that.  Anyway, thought I'd call you.  Bye."  ([106] at 9).

Clark called Lepore back and tried, but failed, to record their conversation. Clark recalls that Lepore said "I understand you got a visit.  Brian [Domalik] is meeting with [the GBI] Monday."  Lepore offered to get Clark an attorney and stated, "you know that was a corporate apartment.  We had to help Jackson—he was going through a divorce."  Lepore said Jackson was technically a consultant for GWCC, not a full-time employee.  Clark also recalls that Lepore said "sorry

---

[22]     The admissibility of the recording is, of course, subject to proper authentication at trial.

you got a visit.  I apologize for that.  Our boy Jackson is at it again."  The call concluded with Lepore saying, "I still love you, man."  ([106] at 10).

The telephone conversation is relevant, including because it supports that Lepore knew about Rite Way's arrangement with Jackson, the apartment, and Jackson's connection to the GWCC.  See Fed. R. Evid. 401.  Lepore's voicemail message is relevant, including because (1) it is evidence that Lepore was aware of, and monitoring, an ongoing investigation involving Jackson and Rite Way, and (2) it shows Lepore, Rite Way's president and co-owner, had a personal relationship with Clark.  Lepore's voicemail message, and Clark's testimony about their telephone conversation, are admissible as non-hearsay statements of an opposing party.  See Fed. R. Evid. 801(d)(2)(A).  The Government's motion to admit this evidence is granted.[23]

> 7.    Lepore's Misrepresentations to Diversified Maintenance Systems

The Government seeks to admit evidence of Lepore's "material misrepresentations" during negotiations to sell Rite Way to Diversified Maintenance Systems ("DMS").  ([106] at 12).  Lepore argues, in his response brief, that the Court should deny or defer ruling on the Government's motion

---

[23]    The admissibility of Lepore's voicemail message is subject to proper authentication at trial.

because it fails to identify any of Lepore's alleged misrepresentations.  ([128] at 32).  In reply, the Government identifies, as an "example" of Lepore's alleged misrepresentations, an October 2013, telephone conversation with DMS Chief Executive Officer Alan Butcher.  ([156] at 19).  In that conversation, Lepore allegedly "assured Butcher that the media reports of an investigation into Rite Way were 'nothing;' and that the GBI was only looking into a civil dispute with the GWCC."  ([156] at 19).  The Court, at this time, denies the Government's motion because the "example" of Lepore's alleged misrepresentations was first described in the Government's reply brief, to which Defendants did not have an opportunity to respond.  Although the example of Lepore's alleged misrepresentations may prove to be relevant, the Court requires the Government to proffer, at trial, all of the representations it seeks to enter into evidence.  The Court will then have the detail and context necessary to determine whether they are admissible.  The Government's motion on this issue is denied without prejudice.[24]

---

[24]     Rife asks the Court to "conduct an *in camera* hearing relating to the coercive plea demands made by the Government with regard to increasing the potential loss to be assessed under U.S.S.G. § 2B1.1 for any defendant who refused the current plea offer and elected to go to trial." ([127] at 18-19).  The Court declines.  Rife provides little explanation for the request and does not offer clear authority that the Court can or should conduct the review requested.  Rife also made this request in a response to a motion in limine, not in a motion.  Rife further alleges that the coercive plea demands were presented to a defendant other than him.  ([127] at

### III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant John Rife's Motion In Limine on the Use of Handwritten Notes of Cecil Clark, or in the Alternative, Motion to Exclude Clark Notes [101] is **DEFERRED**.

**IT IS FURTHER ORDERED** that Defendant John Rife's Motion In Limine on the Use of TV Interview [103] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Government's First Omnibus Motion In Limine to Exclude or Limit Certain Defense Evidence, Statements, and Arguments at Trial [105] is **GRANTED IN PART** and **DENIED IN PART**.  It is **GRANTED** to the extent the Court excludes:

(1)   Evidence of, or references to, other DeKalb County public corruption scandals.

(2)   Evidence or argument that Defendants are not guilty of bribery because they were victims of extortion or economic coercion by the Government.

(3)   Evidence of, or references to, Defendant Brian Domalik's Georgia Tech basketball career.

---

5-6).  No other defendants have raised this concern with the Court or with the Government.  ([156] at 9).  As the Government apparently cautioned the Defendants, it is the Court—not the Government—that determines a defendant's sentence.  ([156] at 9).

(4)     Any suggestion that the unpreserved recording of Cecil Clark's August 2013, telephone conversation with Defendant Anthony Lepore was exculpatory, or that the Government engaged in misconduct related to the recording.

(5)     Evidence of Defendants' specific conduct in order to demonstrate good character or absence of bad character, or character evidence not tied to a pertinent trait.

(6)     Discussion, in the presence of the jury, of pretrial discovery issues.

(7)     Any suggestion that Defendants should be acquitted because other Rite Way employees engaged in similar conduct but were not prosecuted.

It is **DENIED** with respect to the Government's motion to exclude evidence of, or

references to:

(1)     Defendant John Rife's medical conditions or procedures.

(2)     Rite Way's effort to restore Defendant Anthony Lepore's email after its deletion.

   **IT IS FURTHER ORDERED** that the Government's First Omnibus

Motion In Limine to Admit Evidence at Trial [106] is **GRANTED IN PART**,

**DENIED IN PART**, and **DEFERRED IN PART**.  It is **GRANTED** to the extent

the Court admits:

(1)     Evidence of payments made to Jackson because Jackson arranged for Rite Way to hire The Wright Group as a subcontractor.

(2)     Les Pendleton's expected testimony that Defendant Anthony

Lepore directed him to approve a payment to Patrick Jackson, stating "some people are corrupt."

(3)   A recording of, and Cecil Clark's testimony about, his August 2013, telephone conversation with Defendant John Rife.

(4)   Defendant Anthony Lepore's August 2013, voicemail message for Cecil Clark, and Cecil Clark's testimony about their follow-up telephone conversation.

It is **DENIED** with respect to the Government's motion to admit evidence

of:

(1)   A recording of a WSB-TV interview of Defendant John Rife.

(2)   Defendant Anthony Lepore's alleged misrepresentations to Diversified Maintenance Systems.

It is **DEFERRED** with respect to the Government's motion to admit into

evidence Cecil Clark's handwritten notes about the alleged conspiracy.


     **SO ORDERED** this 25th day of August, 2016.



_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE