IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | 1:15-cr-00367-WSD |
| ANTHONY LEPORE, JOHN RIFE, and BRIAN DOMALIK, | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on the Government's oral motions for reconsideration of the Court's September 19, 2016, Opinion and Order [213].  Also before the Court is the Government's oral motion to admit testimony from Andrea Kiehl ("Kiehl"), Diversified Maintenance Systems' ("DMS") former General Counsel, that she told Defendant Anthony Lepore ("Lepore") that, because he was a target of a criminal investigation, "DMS would only go forward with the acquisition of Rite Way if it was structured as an asset purchase transaction." ([198] at 7).

**I.   BACKGROUND**

On July 13, 2016, the Government filed its First Omnibus Motion in Limine to Admit Evidence at Trial [106], seeking to admit evidence of Lepore's "material

misrepresentations" during negotiations to sell Rite Way Services Inc. ("Rite Way") to DMS. ([106] at 12). On August 22, 2016, the Government filed its Notice of Intent to Introduce Evidence [sic] Rule 404(b) [157], stating the Government intends to introduce evidence of Lepore's "false statements and omissions" to Kiehl and DMS CEO Alan Butcher ("Butcher"). ([157.1] at 2). On August 25, 2016, the Court denied [167] the Government's motion without prejudice because the Government did not identify the specific misrepresentations it sought to introduce. ([167] at 27). The Court directed the Government to proffer, at trial, all of the misrepresentations, by Lepore to DMS, that the Government seeks to introduce. ([167] at 27). On September 16, 2016, the Government provided the Court with a written description of Kiehl's expected testimony about the WSB-TV news report and Lepore's allegedly false statements and omissions to her.

Early in the morning on September 19, 2016, and during the course of the trial in this case, the Court issued its Opinion and Order, granting in part and denying in part the Government's request to admit Kiehl's testimony about certain of her conversations with Lepore. Before the jury was called to begin the trial day, the Government orally moved for reconsideration of two of the Court's rulings on the grounds that they included factual errors. The Government also moved orally

to admit Kiehl's statement to Lepore that, because he was a target of a criminal investigation, "DMS would only go forward with the acquisition of Rite Way if it was structured as an asset purchase transaction." ([198] at 7).

## II.   LEGAL STANDARD

"Although no statute or rule expressly provides for the filing of a motion for reconsideration in criminal cases, federal district courts necessarily have substantial discretion in ruling on motions for reconsideration." United States v. Snowden, No. 15-cr-134, 2015 WL 5595767, at *1 (S.D. Ala. Sept. 21, 2015) (internal quotation marks omitted) (quoting United States v. Mason, No. 07-cr-52, 2008 WL 1882255, at * 1 (M.D. Fla. Apr. 24, 2008)); see United States v. Brown, No. 114-cr-25, 2014 WL 6616997, at *1 (S.D. Ga. Nov. 21, 2014) (same); United States v. Saintvil, No. 1:12-cr-285, 2013 WL 6196523, at *2 (N.D. Ga. Nov. 27, 2013) (same).  The appropriate grounds for granting reconsideration include: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice."  Id.; see also Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999) (discussing motions for reconsideration in the civil action context); Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996) ("A

motion for reconsideration is not an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it better' the first time.").

## III. DISCUSSION

### A. Oral Motions for Reconsideration

The Government seeks to admit Lepore's October 2013, statement to Kiehl that he "just found out for the first time, the night before," that Defendant Brian Domalik and four other Rite Way employees were interviewed by the Georgia Bureau of Investigation ("GBI"). ([198] at 5). The Government states that Lepore knew about the interviews in August 2013, and that his statement to the contrary suggests a consciousness of guilt. False exculpatory statements may be used as evidence of consciousness of guilt. See United States v. Alejandro, 118 F.3d 1518, 1521 (11th Cir. 1997). However, "sometimes the evidence [of false exculpatory statements] is excludable because a necessary inference is implausible under the circumstances." 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:4 (4th ed. May 2016 Update).

The question here is whether the statement about when Lepore learned of the interviews is a false exculpatory statement evincing his consciousness of guilt. The Court finds it is not. Even if the statement was untrue, it does not suggest

Lepore's consciousness of guilt, including because it does not suggest he believed he committed an offense or engaged in wrongdoing. The statement, if meaningful at all, was an effort by Lepore to conceal his failure to timely disclose the investigation to a company that he sought to encourage to pursue its purchase of Rite Way.

Lepore's statement about the date he became aware of the GBI interviews does not constitute a representation about the facts underlying the alleged offenses or his involvement in those offenses. See United States v. Littlefield, 840 F.2d 143, 149 (1st Cir. 1988) ("For an allegedly false exculpatory statement to be of any value in the factfinder's deliberations, we think it either must involve a matter collateral to the facts establishing guilt or should be so incredible that its very implausibility suggests that it was created to conceal guilt." (citations omitted)); Mueller & Kirkpatrick, Federal Evidence § 4:4 (false exculpatory statements should be "closely related to the crime charged," such as "a statement denying an element of the crime"). "Typical of the statements admitted to show guilty mind are false claims of alibi, denials of presence at the scene of the crime, false claims of identity, false explanations of activities, false explanations of possession of goods and other objects, and false denials of acquaintance with others involved in the crime." Mueller & Kirkpatrick, Federal Evidence § 4:4. Lepore's statement to

a potential purchaser of his business about when he became aware of certain interviews does not fit into these categories, and had no bearing on the likelihood of his conviction. The Government's motion for reconsideration on this issue is denied.

The Government also moved the Court to reconsider its exclusion of Kiehl's testimony that Lepore reacted calmly when she told him DMS would only proceed with the acquisition of Rite Way if the transaction was restructured as an asset purchase. ([198] at 7). The Court denied the Government's motion during the September 19, 2016, hearing with the parties. Lepore's reaction to the restructuring of Rite Way's acquisition is excluded as irrelevant.[1]

### B. Oral Motion to Admit Kiehl's March 2014, Statements to Lepore about the Structure of the Acquisition

The Court has not addressed the admissibility of Kiehl's March 2014, statement to Lepore that, because Lepore was a target of the investigation, "DMS would only go forward with the acquisition of Rite Way if it was structured as an

---

[1] During its oral motions for reconsideration, the Government also argued for the admissibility of Defendant John Rife's ("Rife") statement to Kiehl that "he didn't know anything about" [the issues involved in the investigation]. ([198] at 7). The Court's September 19, 2016, written Order does not address the admissibility of this statement. The Order states explicitly that the Court will rule, at trial, on any objections to Kiehl's testimony about this statement. ([213] at 2 n.1). Rife's statement likely is admissible as a false exculpatory statement.

asset purchase transaction." ([198] at 7).  On September 19, 2016, the Government orally moved to admit this statement as relevant to Lepore's motive for deleting the email account.  Kiehl referred to the criminal investigation to justify DMS' unwillingness to proceed with a stock purchase transaction.  It was not a statement made by a criminal investigator or prosecutor putting Lepore on notice of his status in the investigation.[2]  It was a statement of the impact of the fact of the investigation on DMS' approach to its potential acquisition of Rite Way.  The statement made clear that DMS would proceed with the transaction as an acquisition of Rite Way's assets and not its stock, thus limiting DMS' liability for the consequences of the criminal investigation and its costs.  There is no evidence that Kiehl told Lepore of the impact, if any, of this change on him personally or that it otherwise would have motivated him to delete his emails.

That the transaction closed days later as an asset sale, and Lepore then left the company, supports the testimony at trial that Lepore sought the deletion of his email account and not the contents of that account, which were stored remotely on a server.  For this reason, the temporal relationship between Kiehl's statement and Lepore's request to take action to migrate him to a new computer and email

---

[2]  Lepore almost certainly already knew he was a target because, as the Government has represented to the Court, it was his counsel who informed Kiehl of Lepore's status as a target of the investigation.

account is not evidence of his intent to delete his emails.[3] The Government's motion on this issue is denied.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Government's oral motions for reconsideration of the Court's September 19, 2016, Opinion and Order [213] are **DENIED**.

**IT IS FURTHER ORDERED** that the Government's oral motion to admit Andrea Kiehl's proffered testimony is **DENIED**.[4]

**SO ORDERED** this 20th day of September, 2016.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[3] The Court notes that Deborah Howell testified, at trial, that Lepore asked her to delete his email account in anticipation of the DMS purchase, and that the deletion was repeatedly "put off" because the acquisition date was repeatedly pushed back.

[4] To the extent the Government seeks Kiehl to testify that she told Lepore that, as a result of the pending investigation, DMS would only go forward with the acquisition of Rite Way if the transaction was structured as an asset purchase, that testimony is allowed but without stating she had heard he was a target of the investigation.