IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:15-CR-00367-WSD-JKL-1 |
| | ) | |
| ANTHONY LEPORE | ) | |

<u>EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO THE</u>
<u>"COMPASSIONATE RELEASE" PROVISIONS OF 18 U.S.C. §3582(C)(1)(a)(i)</u>

COMES NOW Anthony Lepore, by and through undersigned counsel, and hereby files this Emergency Motion to reduce his sentence pursuant to the "compassionate release" statute. Defendant is 68. Because of his age, he in the high-risk category and may die if he is infected with the coronavirus.  The Bureau of Prisons (BOP) acknowledges that the virus is spreading among its institutions. The Attorney General of the United States four days ago recommended that BOP release as many non-dangerous offenders as possible in this emergency situation. However, like all large institutions, BOP acts slowly. Lives are on the line. Under these circumstances, Defendant's sentence should be reduced to time served and he should be immediately released from custody.  Mr. Lepore has served the bulk of his sentence, he fully paid all financial obligations years ago, he has no prior record, and his family is ready to spring into action and put him into self-quarantine at his residence in Birmingham, Alabama.  The Court should therefore grant this Motion.

**Introduction**

Mr. Lepore was born on March 15, 1952.  Until this case, he was the classic self-made man, working up from the janitor to ultimately being the CEO of an $80 million per year facilities services company.

The government investigated bribes paid by some of the company's executives to a corrupt official in Dekalb County. Mr. Lepore was indicted and then convicted after a trial before then-Judge William Duffey in this Court.  Defendant was found guilty of conspiracy to commit Honest Services Fraud, in violation of 18 U.S.C. §1349, Honest Services Mail Fraud, in violation of 18 U.S.C. §1341 and 1346, and Bribery, in violation of 18 U.S.C. §666(a)(2).

Judge Duffey sentenced Mr. Lepore on January 13, 2017 to imprisonment for 108 months, a fine of $150,000.00, restitution of $165,415.83 supervised release of two years, and the mandatory Special Assessment of $1,600.00. Defendant paid all financial penalties shortly <u>before</u> he began serving the custodial portion of his sentence.

Mr. Lepore self-surrendered to the Bureau of Prisons on March 21, 2017, just after his 65th birthday. According to the BOP website, he will be released from confinement on January 20, 2025, shortly before his 73rd birthday. BOP officials have also calculated slightly earlier release dates, based on rules imposed as part of

2

the First Step Act.  Under these new rules, Defendant could be released as early as 2022.  Defendant is currently incarcerated at the Federal Prison Camp in Montgomery, Alabama.

This motion is filed because Mr. Lepore meets the criteria for compassionate release and because his vulnerability to infection by the coronavirus (COVIID-19) places him at a serious risk of death if he remains in BOP custody. As amended by the First Step Act, the compassionate release statute, § 3582(c)(1)(A)(i), allows courts to reduce sentences for "extraordinary and compelling" reasons. Sentence reductions under § 3582(c)(1)(A)(i) must be consistent with the policy statement in U.S.S.G. § 1B1.13 and must reflect consideration of the sentencing factors in 18 U.S.C. § 3553(a). Mr. Lepore qualifies for such relief. He just turned 68 years old. Like many in his age group, he suffers from hypertension and high cholesterol. His age and health and the spread of coronavirus within BOP institutions are the "extraordinary and compelling" reasons that justify his release from custody.

### The Pandemic is a compelling and extraordinary circumstance that warrants compassionate release

On March 11, 2020, the World Health Organization officially classified the new strain of coronavirus that causes COVID-19 as a pandemic. The number of people infected and dying increase each day. These numbers almost certainly underrepresent the true scope of the crisis; test kits in the United States have been inadequate

to meet demand.

On March 13, 2020, the White House declared a National Emergency, under Section 319 of the Public Health Service Act (42 U.S.C. § 247(d)). Also, on March 16, 2020, the White House issued guidance recommending that, for the next eight weeks, gatherings of ten persons or more be canceled or postponed. These drastic measures followed issuance of a report by British researchers concluding that 2.2 million Americans could die without drastic intervention to slow the spread of the deadly illness.

The Centers for Disease Control also issued guidance. It is well-known that adults over 60 years old and people with chronic medical conditions such as lung disease, heart disease, and diabetes are all at much higher risk from the virus. CDC tells such individuals to take immediate preventative actions, including avoiding crowded areas and staying home as much as possible. The new parlance is "social distancing". As set out below, that is impossible for Mr. Lepore.

### BOP Custody Increases Spread of the Virus and Defendant's Age and Health Make Him Especially Susceptible

It is only a matter of time before the virus infects the prison camp where Defendant is incarcerated. As of the writing of this Motion, the BOP website acknowledges 19 inmates and 19 staff members are infected throughout the country. https://www.bop.gov/coronavirus/index.jsp  The numbers are updated

each afternoon at 3:00 pm.  The lack of tests is now commonly recognized as the reason why nobody is certain as to the breadth of the pandemic.  What is certain is that the virus is spreading within custodial institutions. https://www.reuters.com/article/us-health-coronavirus-usa-inmates-insigh/spread-of-coronavirus-accelerates-in-u-s-jails-and-prisons-idUSKBN21F0TM

Conditions of confinement create an optimal environment for the transmission of contagious disease. Inmates arrive at BOP facilities from all over the country, and people who work in the facilities leave and return daily. Public health experts believe that incarcerated individuals are at special risk of infection, given their living situations, and may also be less able to participate in proactive measures to keep themselves safe; infection control is challenging in these settings.

The social distancing that public health officials advocate as essential to limiting the spread of COVID-19 is simply impossible in jail and prison facilities. Crowding, inadequate ventilation, and security issues all contribute to the spread of infectious disease. Hand sanitizer, an effective disinfectant recommended by the Centers for Disease Control to reduce transmission rates, is contraband in jails and prisons because of its alcohol content. Correctional health experts worry that these facilities may become

incubators for the disease.

## BOP Will Not Act Quickly

Members of Congress have written to the Bureau of Prisons to urge that efforts be made to allow immediate release of non-violent, elderly inmates.  As of the writing of this Motion, BOP has ignored this request.

Recognizing the dire situation, Attorney General William Barr issued a memorandum this past Thursday.  In that memo, the Attorney General directed BOP to release certain prisoners to home confinement.

https://www.nytimes.com/reuters/2020/03/26/us/26reuters-health-coronavirus-prisons.html  However, even pursuant to the Attorney General's public announcement of this Memo, it seems clear that BOP will not release any prisoners for at least 14 days after the prisoner is found to be eligible for home confinement. Id.  In the meantime, the virus spreads deeper around the Nation, and seeps into BOP facilities where elderly prisoners such as Mr. Lepore have virtually no defense.

### The §3553(a) Factors and the Release Plan
### Strongly Favor Reducing the Sentence to Time Served

Mr. Lepore is 68 years old, suffers from underlying health issues, and qualifies for compassionate release.  His age makes him exceptionally vulnerable to COVID-19.

Before he was convicted, Defendant was the CEO of a large

6

company.  He had no prior criminal record.  After being convicted, he has been a model prisoner.  Even before he began his sentence he paid all the substantial financial obligations imposed by Judge Duffey. Under these circumstances, compelling and extraordinary circumstances exist to support compassionate release. There is an urgent need to act now, before the virus spreads further and Mr. Lepore becomes infected.

When extraordinary and compelling reasons are established in support of  compassionate release, the Court must then consider additional factors before ordering release of a prisoner. 18 U.S.C. § 3582(c)(1)(A)(i). The Court must look to the sentencing factors from 18 U.S.C.§3553(a) to determine whether a sentence reduction is warranted.

Last Thursday, a District Court applied this statute in the Southern District of New York to decrease an inmate's sentence so as to allow that Defendant to begin home confinement. *United States v. Campagna*, 2020 WL 1489829, 16 Cr-78-01, March 27, 2020. That Court looked at the coronavirus pandemic, that Defendant's compromised immune system, and the fact that the Defendant was not a danger to the safety of any other person or to the community. The Court converted the remaining four months of custody into home confinement, to be followed by supervised release.  In the language of §3882©(1)(A)(i), that Court found "extraordinary and compelling

reasons" to reduce the sentence in that case.

Cases even before the pandemic show that courts have construed their discretion generously when applying this statute and the associated §3553(a) factors. These courts have granted release to Defendants convicted of serious crimes and with histories of violence. Even for such offenders, courts have found that changed health circumstances, post-offense rehabilitation, and carefully-crafted conditions of supervised release ameliorate public safety concerns.

In a case from the Northern District of Illinois, *United States v. Bailey*, the Defendant was 25 years into a 30-year sentence for "an extensive racketeering scheme." There had been a specific finding that the defendant committed offenses relating to a murder. No. 1:94-cr-00481 (N.D. Ill. July 24, 2019) (slip op. at 1). The parties agreed that the defendant, who was almost 90 years old and suffered from several health issues, had satisfied the statutory requirements for compassionate release. However, the government opposed release on discretionary grounds due to the "reprehensible nature of the offenses" and the Defendant's continued denial of responsibility. *Id.* The District Court acknowledged that the Defendant's criminal history and his serious offense conduct supported the government's position. On the other side of the ledger, that Court also looked to more recent factors:

8

institutional adjustment, lack of disciplinary infractions, current age, and the proposed release plan.  These countervailing factors "point in the opposite direction[.]" *Id.* Therefore, the District Court granted relief, concluding that release would not minimize the severity of the offense because the defendant had already served most of the sentence imposed. *Id.* (slip op. at 2).

In the United States District Court for the District of Oregon, a Judge  more recently granted compassionate release to a prisoner serving a 30-year sentence for being the leader of a "major drug conspiracy." *United States v. Spears*, No. 3:98-CR-0208-SI-22, 2019 WL 5190877, at *4 (D. Or. Oct. 15, 2019). As recounted in the opinion, Spears's history included crimes of violence, his performance on supervision in the past had been poor, and he committed the present serious offense while in his fifties. However, Spears is now 76 years old and suffers from "multiple chronic serious medical conditions and limited life expectancy." *Id.* at *1. Although the government argued that Spears remained a danger to the community, the Court disagreed. The Court concluded that, in light of the Defendant's strong family support, the age of his prior convictions, and his diminished physical condition, "appropriate supervision conditions can mitigate any limited risk" to public safety. *Id.* at *5.

Similarly, in *United States v. McGraw*, a Judge in the Southern

District of Indiana granted compassionate release from the Defendant's life sentence for a drug trafficking conspiracy based on serious health concerns and diminished ability to provide self-care. No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488 (S.D. Ind. May 9, 2019). The defendant, who was approximately 55 years old at the time of the offense, was 72 years old at the time of the opinion and suffered from limited mobility, diabetes, and chronic kidney disease. *Id.* at *2. The government argued that the Defendant remained a danger to the community because of his leadership in the Diablos Motorcycle Gang, noting that he could continue his criminal activity with simple access to a telephone. *Id.* at *4. The Court, however, concluded that based on Mr. McGraw's frail condition there were conditions that would reasonably assure the safety of the community, such as requiring no contact with anyone engaged in criminal activity. *Id.* With respect to the § 3553(a) sentencing factors, the Court concluded that the "significant sanction" the defendant had already served (17 years) was sufficient. The Court imposed lifetime supervision to "continue to serve as a sanction and general deterrent, appropriately recognizing the seriousness of Mr. McGraw's conduct." *Id.* at *4.

Defendant concedes that, other than the *Campagna* case cited above, the few courts to have addressed the compassionate release statute in light of the pandemic have refused relief. However,

none of these decisions in the quickly-evolving situation had the benefit of the recent inaction by BOP, nor the memorandum issued by the Attorney General.  These two developments demonstrate that BOP is not going to help inmates such as Mr. Lepore in the foreseeable future.  Even if they begin to screen prisoners for release, that prospect will likely take months.  Elderly and infirm inmates such as Mr. Lepore do not have the luxury of time.

Here, Mr. Lepore was convicted of honest-services bribery and related crimes.  The case was not a crime of violence. At his advanced age, he poses little danger to the community.

Defendant has a strong release plan.  All five of his children and his many grandchildren live in the Birmingham, Alabama area. For years he has lived with his long-time partner in that city. She and Defendant's children have committed to transporting him to his home and commit to assure that he is self-quarantined there for as long as medically necessary.

## This Court has Jurisdiction to Grant Relief

This Court has jurisdiction to consider a compassionate release motion filed by the Defendant upon the defendant's exhaustion of administrative remedies or 30 days after a request for relief is received by the warden. 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Lepore either submitted or will submit a request for compassionate release to the warden of his institution.

11

As is obvious, there is a National Emergency.  There is no time to wait for overburdened BOP officials to consider Defendant's request for compassionate release.  Under these circumstances, the statute can reasonably be construed to not apply the exhaustion requirement in a National Emergency.  Under these circumstances, §3582(c)(1)(A)(i) authorizes this Court to consider  Mr. Lepore's motion for a reduction of sentence without any action by the BOP.

**Conclusion**

In light of the National Emergency, the BOP's inaction, and his personal situation, Mr. Lepore asks that the Court grant this motion and resentence him to time served. Defendant also asks that the Court immediately order BOP to release Mr. Lepore to his family, who will then transport him to his home in Birmingham, Alabama.  Defendant suggests that the Court also order that Mr. Lepore remain self-quarantined in that residence for at least 14 days after he arrives.  Once the period of self-quarantine has concluded, Court could amend conditions of supervision to place Mr. Holden on home detention for some reasonable period.

As in the cited cases, release of Mr. Lepore under the compassionate release statute would not diminish the seriousness of the offense of conviction, but rather would fulfill Congress's intent in offering courts greater flexibility to reduce sentences when changed circumstances justify a second look. In this National

12

Emergency, the combination of factors regarding Mr. Lepore's age, health, incarceration, lack of prior record and strong release plan all warrant a reduced sentence in his case.

*Signature on following page*

Dated: This 30th day of March, 2020.

Respectfully submitted,

*/s/ Paul S. Kish*
PAUL S. KISH
Georgia State Bar No. 424277
ATTORNEY FOR ANTHONY LEPORE

Kish Law LLC
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-207-1338; Fax 404-207-1339
paul@kishlawllc.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 30th day of March, 2020.

_/s/ Paul S. Kish_
PAUL S. KISH
Georgia State Bar No. 424277
ATTORNEY FOR ANTHONY LEPORE

Kish Law LLC
225 Peachtree Street, NE
1700 South Tower
Atlanta, Georgia 30303
404-207-1338; Fax 404-207-1339
paul@kishlawllc.com